**CISSELL MANUFACTURING COMPANY, Plaintiff–Appellee,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Defendant–Appellant.**

No. 95–5619.

United States Court of Appeals,
Sixth Circuit.

Argued June 6, 1996.

Decided Dec. 4, 1996.

Jon L. Fleischaker, Stephen R. Price (argued and briefed), Michelle D. Wyrick, Wyatt, Tarrant & Combs, Louisville, KY, for Plaintiff–Appellee.

James H. Barr, Asst. U.S. Attorney, Louisville, KY, Samuel Bagenstos (argued and briefed), Mark L. Gross, U.S. Department of Justice, Civil Rights Division, Appellate Section, Washington, DC, Richard S. Ugelow, U.S. Department of Justice, Civil Rights Division, Washington, DC, for Defendant–Appellant.

Before: MILBURN and SUHRHEINRICH, Circuit Judges; ROSEN,* District Judge.

MILBURN, J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. ROSEN, J. (pp. 1138–45), delivered a separate dissenting opinion.

MILBURN, Circuit Judge.

 In this action seeking review of a final administrative determination that an employer engaged in discrimination in violation of a federal contract, brought under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, the Department of Labor appeals the district court's denial of its motion to remand and the district court's grant of plaintiff Cissell Manufacturing Company's

motion for summary judgment. On appeal, the issue is whether the district court erred in granting Cissell Manufacturing Company's ("Cissell") motion for summary judgment and denying the Department of Labor's ("the Department") motion to remand upon determining that the Department had failed to present evidence that established its jurisdiction over the case. For the reasons that follow, we reverse and remand.

## I.

### A.

In September 1978, Larry Brown began working for plaintiff Cissell, which manufactures commercial laundry and dry cleaning equipment at its facilities in Louisville, Kentucky. Brown worked as a welder on the "dryer line," where he welded together the bottom of dryers as the dryers were pulled along a conveyor belt. Approximately three months later, Brown was transferred to another position within the same job classification. At that position, Brown worked as a welder at the "spider table," where he welded four-pronged metal components together. On April 26, 1983, Brown was involved in an accident at work that caused injuries to his knees. In response, Cissell prepared an accident report and recommended that Brown see a doctor. Brown, however, chose not to see a doctor at that time and continued to work without complaint or loss of time from work.

In August 1983, Cissell transferred Brown to another position on the dryer line. Shortly after being reassigned to the dryer line, Brown complained of having pain in his knees and asked to return to the spider table position. Cissell arranged for Brown to see an orthopedic surgeon, Dr. Raymond Shea, on August 11, 1983. Dr. Shea concluded that Brown had chondromalacia patellae, a form of arthritis that involves degeneration of the cartilage in the knee, and advised Brown to avoid jobs with excessive bending and lifting at the knees. Dr. Shea also concluded that Brown could safely perform his job on the

* The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

dryer line. When Brown returned to work on August 15, 1983, he asked to return to the doctor immediately. Cissell's personnel manager, Anna Mae Royalty, advised Brown to continue working and to keep his scheduled appointment with Dr. Shea on August 18, 1993. Brown did not report to work on August 16, 1993, however, and instead scheduled an appointment with Dr. Shea for that day. Dr. Shea determined that Brown could return to work without restrictions. Brown returned to work on August 17, 1983, and went to Dr. Shea's office for a checkup on August 23, 1983. Dr. Shea noted that Brown had much less pain in his knees and sent Brown back to work with no restrictions. Dr. Shea also gave Brown knee sleeves to wear while at work.

In September 1983, Brown placed a bid to request to transfer from his welder classification to a spot welder classification, a lower paying classification. Brown was transferred to the spot welder classification on September 6, 1983. As a spot welder, Brown was initially put on the production line welding dryer cabinets, and he worked in that position for approximately three weeks. Brown was next assigned to a handyman position and eventually was assigned to the basket department. In the basket department, Brown and two other men assembled and spot welded dryer baskets. Brown remained in this position for approximately one year without any complaint concerning his knees.

On August 31, 1984, Brown visited his own physician, Dr. Jerold E. Tomlin, without advising anyone at Cissell. Dr. Tomlin found that Brown had full painless range of motion of both knees and advised Brown to perform exercises and to avoid kneeling, deep knee bending, and stairs as much as possible. Because Cissell had not received any reports of new injury or any complaints regarding Brown's knees, Cissell refused to authorize payment for Dr. Tomlin's services.

Brown continued working as a spot welder and did not complain that he was having pain in his knees. However, on October 9, 1984,

Brown returned to Dr. Tomlin and obtained a note that contained medical restrictions. The note, labeled a "Disability Certificate," stated that Brown should not be placed in a job that required stooping or deep knee bends and that Brown should preferably be given a sit-down position. On October 10, 1984, Brown gave the note to the union steward, Lee Warfield, and Warfield delivered the note to Cissell's personnel department. Brown's foreman, Junior Winn, who had not seen the note, received instructions to send Brown home. Accordingly, Winn told Brown to "hit the clock," and Brown did so. The union steward then informed Brown that he could not return to work until all medical restrictions were lifted. Cissell presented evidence that it had no permanent sit-down positions in the spot welding classification and that all of the jobs in the welding department required some bending or stooping.

Brown then filed a worker's compensation claim. While the claim was pending, Brown received twenty-six weeks of sick leave under the collective bargaining agreement. When the twenty-six weeks of sick leave were near expiration, Brown obtained another note from Dr. Tomlin that stated that Brown could not return to work involving squatting or carrying heavy loads for the next ninety days. Brown subsequently was placed on two consecutive ninety-day unpaid leaves of absence. When Brown's second leave of absence expired, Cissell notified him in a letter dated July 11, 1985, that, pursuant to the collective bargaining agreement, Brown's employment would be terminated unless he returned to work. Brown did not return to work, and his employment was terminated on October 10, 1985.[1]

## B.

On October 25, 1985, Brown filed a complaint with the Department of Labor's Office of Federal Contract Compliance Programs ("OFCCP") alleging that Cissell had discriminated against him on the basis of his handicap.[2] After investigating the charge, the

---

1. Cissell nominally reinstated Brown as an employee when the Worker's Compensation Board awarded Brown a ten percent disability payment in December 1985.

2. Brown initiated two separate actions against Cissell before filing his complaint with the OFCCP. In the first lawsuit, Brown filed a complaint in federal court alleging race discrimina-

OFCCP filed an administrative complaint against Cissell on August 28, 1987. The complaint alleged that Cissell had violated § 503 of the Rehabilitation Act, as amended, 29 U.S.C. § 793, by failing to reasonably accommodate Brown's disability. On December 21, 1988, an administrative law judge ("ALJ") initially concluded that Brown was not handicapped under Section 503 and recommended granting summary judgment in favor of Cissell. However, on December 5, 1989, the Assistant Secretary for Employment Standards ("the Assistant Secretary") rejected the ALJ's recommendation and remanded the case to the ALJ. The ALJ held an administrative hearing on April 25 and 26, 1990, and, in May 1992, the ALJ issued a ruling in which he concluded that Brown was handicapped under Section 503 and that Cissell had failed to reasonably accommodate Brown's impairment. The ALJ recommended that Brown be reinstated with full seniority and benefits, that Cissell pay Brown back pay with interest, and that Cissell cease its "no light duty" policy.

On February 14, 1994, the Acting Assistant Secretary issued a final decision and order upholding the ALJ's recommendation. The order further provided that the failure to comply within sixty days would result in debarment, pursuant to which all of Cissell's federal contracts would be cancelled and Cissell would become ineligible for the award of any other government contracts. Cissell filed a motion to stay the debarment proceedings with the Assistant Secretary, and the motion was denied.

## C.

On March 15, 1994, Cissell initiated this action, seeking judicial review of the Assistant Secretary's final administrative decision. In its complaint, Cissell alleged that the Assistant Secretary's decision should be re-versed, among other reasons, because the Department had not proved that it had jurisdiction over Brown's case. Cissell also sought an injunction against the Department's debarment proceedings. On April 20, 1994, after holding a hearing, the magistrate judge recommended that a temporary restraining order be issued pending disposition of the preliminary injunction issue or adjudication of the underlying claims. The district court issued a temporary restraining order on April 29, 1994, and then a preliminary injunction on May 28, 1994, staying the debarment proceedings pending the court's disposition of the case.

On July 25, 1994, Cissell filed a motion for summary judgment arguing that the Department lacked jurisdiction over Brown's complaint under § 503 of the Rehabilitation Act. At the time that the OFCCP initiated administrative proceedings against Cissell, § 503 of the Rehabilitation Act required that a contractor who entered into a contract in excess of $2500 with a Federal department or agency for the sale of personal property or nonpersonal services for the United States "take affirmative action to employ and advance in employment qualified handicapped individuals" when "employing persons to *carry out* such [government] contract[s]." 29 U.S.C. § 793(a) (1985) (emphasis added).[3] The OFCCP relied on a jurisdictional regulation promulgated by the Department that interpreted the meaning of § 503 when it initiated proceedings against Cissell. The regulation presumed that all employees of a contractor that held at least one covered contract were employed to carry out those contracts unless the contractor received a waiver from the Director of the OFCCP by demonstrating that certain of its facilities were in "all respects separate and distinct from activities ... related to the performance of the contract." 41 C.F.R. 60–741.3(a)(5) (hereinafter

tion. In the second, Brown filed a complaint in state court alleging that Cissell had breached the collective bargaining agreement, and Cissell removed the action to federal court. The district court in each case granted summary judgment in favor of Cissell.

**3.** In 1992, the Rehabilitation Act was amended to delete the language that requires affirmative action only for persons "employ[ed] to carry out

such contract[s]." 29 U.S.C. § 793(a) (1988 & 1994 Supp). Thus, the amendment makes clear that § 503's affirmative action requirement applies to *all* employees of a contractor who enters into a covered government contract. Therefore, the jurisdictional question at issue in this case will not occur in cases arising after the Act's 1992 amendment.

referred to as "the presumption/waiver regulation").

However, while this case was pending before the ALJ on remand, the district court for the District of Columbia invalidated the Department's presumption/waiver regulation upon finding that the regulation was inconsistent with § 503's statutory language. *Washington Metro. Area Transit Auth. v. DeArment,* 1991 WL 185167, at *2 (D.D.C. Jan. 3, 1991) (unpublished opinion) (*"WMATA"*). The Department did not appeal the judgment in *WMATA* and no longer relies on the presumption/waiver regulation. *See* 57 Fed. Reg. 48084 (to be codified at 41 C.F.R. pt. 60–741) (proposed Oct. 21, 1992) (proposing to replace the presumption/waiver regulation with a regulation setting forth standards for determining whether particular workers are employed to carry out covered government contracts).

Although the presumption/waiver regulation was declared invalid in *WMATA* on January 3, 1991, the OFCCP did not present any additional evidence that Brown was employed to carry out a covered government contract before the Assistant Secretary's final decision on February 14, 1994.[4] Thus, Cissell argued in its motion for summary judgment that, because the Department had failed to present such evidence, it had failed to show that it had jurisdiction over the case.

In response to Cissell's motion for summary judgment, the Department filed a motion to remand on August 22, 1994. In its motion, the Department conceded that·it had applied an erroneous legal standard in the administrative proceedings by applying its presumption/waiver regulation. The Department argued, however, that the case should be remanded for further agency proceedings so that the OFCCP could establish proof that Brown had worked on a covered federal contract.

On November 28, 1994, the district court found that the Department had failed to establish that the OFCCP ever had jurisdiction over Brown's complaint. Relying on *PPG Industries, Inc. v. United States,* Civil Action

No. 89–0757 (D.D.C. Dec. 22, 1993) (unpublished opinion), *rev'd,* 52 F.3d 363 (D.C.Cir. 1995), the district court denied the motion to remand and explained, "It would indeed constitute a manifest injustice to [Cissell] for this Court to allow [the Department] the opportunity to collect jurisdictional facts that it could have known for three (3) years might be necessary and yet failed to obtain." J.A. 50. The district court granted Cissell's motion for summary judgment and denied the Department's motion for reconsideration on March 3, 1995. This timely appeal followed.

## II.

■ The Department argues that the district court erred in granting Cissell's motion for summary judgment and denying its motion to remand upon concluding that it had failed to prove that it had jurisdiction over the case. When reviewing an administrative agency's final decision under the APA, "[w]e review the district court's decision de novo, applying the appropriate standard of review to the agency's decision." *Schuck v. Frank,* 27 F.3d 194, 197 (6th Cir.1994). In this case, the district court addressed the issue of whether the case should be dismissed for lack of jurisdiction or remanded to the agency so that the record could be supplemented to establish jurisdiction.

■ It is well settled that when an agency makes an error of law in its administrative proceedings, a reviewing court should remand the case to the agency so that the agency may take further action consistent with the correct legal standards. *South Prairie Constr. Co. v. Local No. 627, Int'l Union of Operating Eng'rs,* 425 U.S. 800, 806, 96 S.Ct. 1842, 1845, 48 L.Ed.2d 382 (1976) (per curiam); *SEC v. Chenery Corp.,* 318 U.S. 80, 94–95, 63 S.Ct. 454, 462–63, 87 L.Ed. 626 (1943); *Harlan Bell Coal Co. v. Lemar,* 904 F.2d 1042, 1046 (6th Cir.1990) ("If the ALJ or the Board has erred by . . . reviewing evidence under an incorrect legal standard, then we must remand the case for additional proceedings."); *Faries v. Director,*

---

**4.** Neither the OFCCP nor Cissell addressed the validity of the presumption/waiver regulation pri-

or to the Assistant Secretary's final decision.

*OWCP,* 909 F.2d 170, 173 (6th Cir.1990) ("Where the ALJ or BRB has erred by reviewing evidence under an incorrect legal standard, remand of the case for additional proceedings is normally appropriate."). *See also PPG Indus., Inc. v. United States,* 52 F.3d 363, 365 (D.C.Cir.1995); *Rhode Island Higher Educ. Assist. Auth. v. Secretary, U.S. Dep't of Educ.,* 929 F.2d 844, 857 (1st Cir. 1991); *Thompson v. United States Dep't of Labor,* 885 F.2d 551, 555 (9th Cir.1989). In *NLRB v. Food Store Employees Union,* 417 U.S. 1, 94 S.Ct. 2074, 40 L.Ed.2d 612 (1974), the Supreme Court explained that a reviewing court must remand a case in which an administrative agency committed an error of law except where "crystal-clear Board error renders a remand an unnecessary formality." *Id.* at 8, 94 S.Ct. at 2079.

Cissell argues that it would be unfair to remand the case at this time in order to allow the OFCCP to reopen the proceedings to establish its jurisdiction over the case because it failed to make a timely motion for remand after the presumption/waiver regulation was declared invalid in *WMATA.* The District of Columbia Circuit recently addressed a similar challenge in *PPG Industries.* In *PPG Industries,* the court rejected the employer's argument that it would be unfair to remand the case to allow the OFCCP to reopen the proceedings against it because the agency had failed to establish jurisdiction at any time during the administrative proceedings.[5] The court held that no principle of administrative law prohibits "an agency from reopening proceedings to take new evidence after the grounds upon which it relied are determined by a reviewing court to be invalid." *PPG Industries,* 52 F.3d at 366 (noting that the Supreme Court explicitly found that a reopening is one of the courses an agency may follow after a reviewing court

has determined that the agency's initial determination included an error of law). *See Food Store Employees Union,* 417 U.S. at 10–11, 94 S.Ct. at 2080; *Fly v. Heitmeyer,* 309 U.S. 146, 148, 60 S.Ct. 443, 444, 84 L.Ed. 664 (1940). Likewise, we have remanded cases to agencies so that they could reopen the proceedings and take additional evidence where an agency's legal error prevented the parties from developing the record on an issue. *See Harlan Bell,* 904 F.2d at 1047; *Tackett v. Benefits Review Bd.,* 806 F.2d 640, 642 (6th Cir.1986) (per curiam).

The court further held in *PPG Industries* that the "fairness" question regarding the length of time between the initiation of administrative proceedings and the Department's motion to remand to establish its jurisdiction should first be decided by the Secretary and only should be raised before the district court on review under the APA. *PPG Industries,* 52 F.3d at 366 (citing *FCC v. Pottsville Broadcasting Co.,* 309 U.S. 134, 146, 60 S.Ct. 437, 443, 84 L.Ed. 656 (1940)). Therefore, the court reversed the district court concluding that it was improper for the district court to consider the "fairness" question before it had been presented to the Secretary. *Id.*[6]

We agree with and adopt the reasoning of the District of Columbia Circuit in *PPG Industries.* We conclude that in this case, the district court erred in denying the Department's motion to remand by concluding that allowing the OFCCP to present evidence that Brown was employed to carry out a covered government contract would constitute "a manifest injustice." J.A. 50. Cissell must first present its "fairness" question to the Secretary before it may be reviewed under the APA. Accordingly, we hold that the district court erred in denying the Department's

5. Cissell attempts to distinguish the present case from *PPG Industries* by asserting that in *PPG Industries,* the Department made a timely motion to remand after the *WMATA* decision. We note that although the presumption/waiver regulation was not invalidated by *WMATA* until after both parties had filed motions for summary judgment in the district court in *PPG Industries,* the Department did not make a motion to remand until "[s]ome months later." *PPG Industries,* 52 F.3d at 365. Moreover, the court's decision in *PPG Industries* did not turn on the timeliness of the

motion to remand. In fact, the employer in *PPG Industries* argued that a remand would be unfair because of the length of time that had passed since the Department initiated proceedings against it. Accordingly, we find that *PPG Industries* is not distinguishable from the present case.

6. We note that in *PPG Industries,* the District of Columbia Circuit reversed the case on which the district court in this case relied.

motion to remand the case for further agency proceedings.[7]

### III.

For the reasons stated, the judgment of the district court is REVERSED and the case is REMANDED to the district court with instructions to remand the case to the Department of Labor for further proceedings.

ROSEN, District Judge, dissenting.

In this case, the Defendant–Appellant United States Department of Labor ("DOL") asks us to invoke the "usual remedy" of remand in response to that agency's legal error, even though the DOL consistently failed to cure or even address a plain and well-established jurisdictional defect throughout a prolonged course of administrative proceedings. Because I see no reason to exempt the DOL from the rules that govern any other litigant, and because remand at this late date would work a manifest injustice upon a private party that is entitled to closure, I respectfully dissent.

### I.

The majority has summarized very well the pertinent facts underlying the alleged violation of the Rehabilitation Act by Plaintiff–Appellee Cissell Manufacturing Company ("Cissell"). I wish only to highlight a few important facts from the protracted administrative proceedings brought against Cissell by the DOL's Office of Federal Contract Compliance Programs ("OFCCP").

These proceedings began on October 25, 1985, when Cissell employee Larry Brown ("Brown") filed a complaint with the DOL's Office of Federal Contract Compliance Programs ("OFCCP"), alleging that Cissell's failure to reasonably accommodate his knee in-

jury violated § 503 of the Rehabilitation Act, 29 U.S.C. § 793.[1] After investigating Brown's complaint, the OFCCP filed an administrative complaint against Cissell on August 28, 1987. An administrative hearing was held, and an Administrative Law Judge ("ALJ") issued a decision on December 21, 1988, recommending that summary judgment be awarded to Cissell because Brown was not a "handicapped individual" as that term is used in § 503. However, the DOL's Assistant Secretary for Employment Standards remanded the case to the ALJ on December 5, 1989, concluding that the OFCCP should be given the opportunity to offer evidence that Brown had lost job opportunities because of his knee injury.

A second administrative hearing was held in April of 1990. On May 22, 1992, over two years after the hearing, the ALJ issued a decision finding that Brown was a "handicapped individual," and that Cissell had failed to reasonably accommodate Brown's disability. On February 14, 1994, after yet another nearly two-year delay since the ALJ's decision, the Acting Assistant Secretary for Employment Standards issued a final decision and order affirming the ALJ's findings. In short, nearly nine years after Brown filed his administrative complaint, and after two rounds of hearings and administrative appeals, the DOL ultimately concluded that Cissell had indeed violated § 503 of the Rehabilitation Act.

As the majority observes, the DOL's interpretation of § 503 was invalidated during the course of these lengthy administrative proceedings, thereby significantly undermining the agency's jurisdictional basis for proceeding against Cissell. Specifically, in January of 1991, the District Court for the District of Columbia struck down the DOL's "presumption/waiver" regulation, 41 C.F.R. § 60–

---

7. Although the district court addressed only the jurisdictional issue, Cissell argues that we may affirm the district court's grant of Cissell's motion for summary judgment on other grounds. However, as we noted in *City of Kingsport, Tennessee v. Steel and Roof Structure, Inc.*, 500 F.2d 617 (6th Cir.1974), "it would be inappropriate for us to affirm a summary judgment on grounds not considered by the District Court." *Id.* at 620. *See Brader v. Allegheny Gen. Hosp.*, 64 F.3d

869, 877 (3d Cir.1995). Accordingly, we will not reach Cissell's alternative arguments.

1. Brown apparently has also filed two lawsuits against Cissell, claiming that the company breached a collective bargaining agreement, and that the company discriminated against him on account of his race. In both cases, summary judgment was awarded to Cissell.

741.3(a)(5), finding that it impermissibly extended the protection of § 503 beyond those employees who were actually employed to "carry out" federal contracts. *Washington Metro. Area Transit Auth. v. DeArment*, 55 Empl. Prac. Dec. (CCH) ¶ 40,507, 1991 WL 185167 (D.D.C. Jan. 3, 1991) ("*WMATA*").

Not only did the DOL decline to appeal the judgment in *WMATA*, but the agency expressly acknowledged its erroneous interpretation of § 503 by issuing revised regulations that did away with the presumption of coverage. *See* 61 Fed.Reg. 19,336, 19,353 (1996) (to be codified at 41 C.F.R. 60–741.4(a)(2)).[2] Moreover, and of particular significance here, the DOL's Assistant Secretary responded to *WMATA* by issuing *sua sponte* orders remanding at least *eight other* § 503 cases to ALJs for reconsideration of the "carry out the contract" issue.[3] At least two of these remands occurred before the final agency decision in this case; indeed, the earliest order of remand in light of *WMATA* apparently was issued in May of 1992, at nearly the same time as the ALJ's decision in this case.

In the instant matter, the two hearings before the ALJ both occurred prior to the *WMATA* decision. Thus, in reliance on the presumption/waiver regulation, the OFCCP presented no evidence indicating that Brown was employed by Cissell to "carry out" a federal contract. However, the ALJ's decision finding that Cissell had violated the Rehabilitation Act was not issued until May of 1992, *well after* the DOL regulation was invalidated by *WMATA*. This decision was affirmed by the Acting Assistant Secretary in February of 1994, fully *three years* after *WMATA* was decided. Nevertheless, neither the ALJ's decision nor the affirmance by the Acting Assistant Secretary addressed the *WMATA* decision.[4] Moreover, because the "carry out the contract" issue was never raised throughout the DOL's proceedings, the administrative record in this matter is completely devoid of any reference to the possible impact of the *WMATA* decision, and is similarly devoid of any evidence tending to show that Brown's employment with Cissell involved any work under a federal contract.

Rather, the "carry out the contract" issue was first raised when Cissell filed its complaint with the District Court. Count I of Cissell's complaint alleges that the DOL exceeded its jurisdiction by finding that Cissell had violated the Rehabilitation Act without first determining whether Brown was employed by Cissell to carry out a federal contract. In addition, Cissell asserted this argument as one of several grounds in support of its motion for summary judgment.

Before the District Court, the DOL eventually conceded that the "carry out the contract" issue had never been addressed throughout the lengthy course of its administrative proceedings.[5] The DOL argued, however, that remand to the agency would be the proper remedy for this legal error. Although the District Court found that remand would be unfair to Cissell, the majority here concludes that the "usual remedy" of remand

---

**2.** This revised regulation governs only a limited number of cases. In 1992, Congress amended the Rehabilitation Act, removing the "carry out such contract" language at issue in this case. *See* Pub.L. No. 102–569, 106 Stat. 4360, 4427 (codified at 29 U.S.C. § 793 (Supp.1994)). Thus, under current law, it is no longer necessary to show that an individual is employed to "carry out" a federal contract.

The amended Act, however, applies only to employment actions taken by federal contractors after October 29, 1992. *See* 61 Fed.Reg. 19,336, 19,341–42 (1996). Consequently, in the instant case, the DOL continues to bear the burden of establishing that Brown was employed to carry out a federal contract.

**3.** In contrast, the DOL has identified only two instances (including this one) in which the Assis-

tant Secretary failed to remand cases for reconsideration in light of *WMATA*. In its written submissions and at oral argument, the DOL was unable to provide any explanation for this failure beyond simple inadvertence.

**4.** Ironically, the final decision of the Acting Assistant Secretary actually cites *WMATA*, but fails to consider the implications of that case to the instant matter.

**5.** In opposing Cissell's earlier motion for a temporary restraining order, the DOL apparently argued that there was sufficient evidence in the administrative record from which it could be inferred that Brown was employed to carry out a federal contract. However, the agency subsequently abandoned this position in its opposition to Cissell's motion for summary judgment.

is appropriate in this case. Respectfully, I cannot agree.

## II.

I begin my analysis where the majority's began: namely, with the "general rule" that remand is "normally appropriate" where an agency has committed a legal error in the course of administrative proceedings. *Faries v. Director, OWCP*, 909 F.2d 170, 173 (6th Cir.1990); *see also PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C.Cir.1995) ("Under settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards."). While I do not quarrel with this general statement of administrative law, I am greatly concerned that adherence to this "general rule" in this case would effectively elevate it to an ironclad rule without exception. For, if any case warrants a departure from this general rule, this is such a case.

That such a departure is appropriate here can best be seen by considering the cases and the underlying policy that give rise to the general rule. In particular, a survey of the cases cited by the majority in support of this general rule reveals certain crucial distinctions between those cases and the instant one. In most of the cited cases, the court ordered a remand after the agency's legal error was revealed during *that particular course* of judicial review. *See South Prairie Constr. Co. v. Local No. 627, Int'l Union of Operating Eng'rs*, 425 U.S. 800, 805–06, 96 S.Ct. 1842, 1844–45, 48 L.Ed.2d 382 (1976); *NLRB v. Food Store Employees Union, Local 347*, 417 U.S. 1, 8–10, 94 S.Ct. 2074, 2079–80, 40 L.Ed.2d 612 (1974); *SEC v. Chenery Corp.*, 318 U.S. 80, 92–95, 63 S.Ct. 454, 461–63, 87 L.Ed. 626 (1943); *FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 145, 60 S.Ct. 437, 442, 84 L.Ed. 656 (1940); *Rhode Island Higher Educ. Assistance Auth. v. Secretary, U.S. Dep't of Educ.*, 929 F.2d 844, 856–57 (1st Cir.1991); *Thompson v. United States Dep't of Labor*, 885 F.2d 551, 555–58 (9th Cir.1989). Under those circumstances, remand to the agency serves the important purpose of permitting the agency to exercise its particular expertise and congressionally-delegated authority in light of the legal standard that has emerged from the judicial review process. *See South Prairie*, 425 U.S. at 805–06, 96 S.Ct. at 1844–45; *Food Store Employees Union*, 417 U.S. at 9–10, 94 S.Ct. at 2079–80; *Chenery*, 318 U.S. at 94–95, 63 S.Ct. at 462; *Pottsville Broadcasting*, 309 U.S. at 145, 60 S.Ct. at 442; *Harmon v. Thornburgh*, 878 F.2d 484, 494–95 (D.C.Cir.1989), *cert. denied*, 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990).

Just as these cases indicate that remand is the "usual" remedy, they also give rise to the sole exception recognized by the majority: a matter need not be remanded where "crystal-clear [agency] error renders a remand an unnecessary formality." *Food Store Employees Union*, 417 U.S. at 8, 94 S.Ct. at 2079; *see also Rhode Island Higher Educ. Assistance Auth.*, 929 F.2d at 857 (finding that remand would not be an "empty exercise" in that case). Plainly, if the result upon remand is foreordained under the new legal standard just fashioned by a reviewing court, then remand would indeed be an "unnecessary formality." This exception very well may not apply in this case; upon remand, the OFCCP might be able to carry its burden of proof on the "carry out the contract" issue.

I do not believe, however, that this "unnecessary formality" test states the *lone* exception to the general rule of remand. Rather, in my view, the distinct circumstances of this case dictate recognition of other possible grounds for eschewing the general rule. In contrast to the courts in the above-cited cases, neither this Court nor the court below has been called upon to inquire whether the DOL committed a legal error during its administrative proceedings against Cissell. Rather, the legal error in question had *already* been identified in *WMATA* and acknowledged by the DOL well before that agency reached its decision in the instant matter. Thus, we are not being asked here to perform any sort of judicial review of an agency determination, but instead are being invited to exercise our judicial authority to grant the DOL yet another opportunity to

correct an error of which it was well aware throughout the latter stages of its proceedings against Cissell.

In light of this distinction, the "usual" reason for the "usual" remedy simply is not present here. A remand would not enable the DOL to exercise its expertise in light of the legal wisdom imparted through judicial review. Because we have "laid bare" no legal error here, *Pottsville Broadcasting*, 309 U.S. at 145, 60 S.Ct. at 442, the agency can claim no entitlement to take corrective action in response. Rather, in this case, the DOL already enjoyed an ample opportunity to bring its expertise to bear upon the correct legal standard; the agency simply failed to avail itself of this opportunity. *See Telecommunications Research and Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C.Cir.1984) ("It is obvious that the benefits of agency expertise ... will not be realized if the agency never takes action.").[6]

In my view, then, we are confronted here with a sort of "waiver" that was not present in the cases following the "general rule" of remand. When the Supreme Court in *Pottsville Broadcasting* declined to deviate from the usual rule of remand despite the threat of "a succession of single determinations upon single legal issues ... with resulting delay and hardship," it did so because the alternative would have been judicial usurpation of functions delegated to agencies by Congress. 309 U.S. at 146, 60 S.Ct. at 443; *see also Rhode Island Higher Educ. Assistance Auth.*, 929 F.2d at 857 (noting that remand is preferable to a "free-wheeling judicial inquiry into the merits"). In contrast, there is no threat here that, by failing to remand, we will usurp a DOL function; we are not being asked to substitute our judgment for the agency's on the "carry out the contract" question. Instead, we would simply deem the DOL to have forfeited its chance to exercise its judgment in this case, by virtue of its failure to timely address and cure its acknowledged legal error.

Similarly, another line of cases relied upon by the majority is readily distinguishable here. Specifically, we have previously concluded that remand is appropriate where an administrative board of appeals applied an intervening change in law without affording a party the opportunity to present evidence directed at this new legal standard. *See Harlan Bell Coal Co. v. Lemar*, 904 F.2d 1042, 1046–48 (6th Cir.1990); *Tackett v. Benefits Review Bd.*, 806 F.2d 640, 642 (6th Cir.1986). Compare *Faries v. Director, OWCP*, 909 F.2d 170, 175 (6th Cir.1990) (finding remand unnecessary where "the applicable legal standard travelled a full circle beginning and ending at the same place" during the course of administrative proceedings). In *Harlan Bell*, we reasoned that "[f]undamental fairness" dictates such a remand. 904 F.2d at 1048.

Clearly, this case raises no similar concerns of fairness. First, a governmental agency is certainly not entitled to a greater degree of procedural fairness than is a private party. Indeed, as the District Court recognized, there surely comes a point when continued administrative proceedings become unfair and oppressive to the private parties who are repeatedly haled before the agency. Moreover, if the DOL has been "deprived" of an opportunity to address a new legal standard, it is only because of that agency's own failure to seize that opportunity. Since the agency did so in at least eight other cases, it cannot be said that this opportunity was merely hypothetical or illusory.

Finally, I cannot agree with the majority's view that the D.C. Circuit's decision and reasoning in *PPG Indus., Inc. v. United States*, 52 F.3d 363 (D.C.Cir.1995), should control the instant matter. In particular, the majority fails to note a crucial distinction between *PPG* and this case: namely, the administrative proceedings against PPG had already concluded, and a final agency decision had already been issued, *before* the

---

**6.** Cissell also points out that little would be lost if the DOL were denied the opportunity to revisit this case in light of *WMATA*. Any newly-fashioned agency standards or regulations that might flow from the DOL's response to *WMATA* would apply only to the handful of still-pending cases

involving alleged § 503 violations that occurred prior to October 29, 1992. Cases alleging violations that occurred after that date would be governed by the amended § 503, which no longer includes the "carry out the contract" requirement.

*WMATA* court invalidated the DOL's presumption/waiver regulation. 52 F.3d at 365. In fact, cross-motions for summary judgment were pending in the district court when PPG first learned of, and advised the court of, the *WMATA* decision. 52 F.3d at 365. Thus, in *PPG,* the DOL clearly could not have been viewed as having forfeited its opportunity to address the "carry out the contract" issue by virtue of its failure to identify this issue during the course of its administrative proceedings. Rather, because *WMATA* had not yet been decided when the DOL concluded its administrative proceedings against PPG, the agency was entitled to rely on its still-valid presumption/waiver regulation.

Admittedly, despite this important distinction between *PPG* and the instant matter, some of the broader language in *PPG* lends support to the result the majority reaches here. For example, the majority cites the *PPG* court's inability to identify any "principle of administrative law that restricts an agency from reopening proceedings to take new evidence after the grounds upon which it relied are determined by a reviewing court to be invalid." 52 F.3d at 366. However, as discussed earlier, I believe that significantly different concerns are implicated when the agency's error is not "determined by a reviewing court," but instead was identified far earlier and previously acknowledged by the agency, and is simply overlooked in the agency's subsequent proceedings.

Next, the majority points to the *PPG* court's reasoning that the DOL should be permitted to make the initial determination whether it is fair to reopen administrative proceedings. 52 F.3d at 366. I am hesitant to accept this as a general principle of administrative law, as it makes the agency the judge and jury of the consequences of its own failures. But, even accepting the validity of this proposition, the factual distinctions between *PPG* and the instant case render it inapposite here. Because the agency in *PPG* was guilty of no oversight in failing to address the "carry out the contract" issue during the course of administrative proceedings, its "fairness" inquiry on remand would focus solely on the unfairness of "reopen[ing] proceedings against PPG after all this time has passed." 52 F.3d at 366. Although this question of fairness is similarly present in this case, we are confronted here with the *additional* question whether the agency's own carelessness in the first round of administrative proceedings should operate as a waiver of the opportunity to try again. In light of this additional issue, I certainly do not believe that the agency is entitled to make the initial determination as to its *own* transgressions; rather, that is precisely the function of judicial review of agency action.

In short, unlike those courts that have invoked the "usual" remedy of remand, we are not asked here to determine whether the DOL committed a legal error. Instead, because the DOL has already acknowledged its error, and because the agency became aware of this error more than three years before it reached its final decision in this case, we are asked here to decide whether the DOL is entitled to conduct yet another round of administrative proceedings, or whether it has forfeited any right to further administrative proceedings by virtue of its deficient performance in its prior proceedings. Accordingly, I turn to this specific question.

### III.

Although the majority apparently concludes that precedent binds us to order the usual remedy of remand, I have endeavored through the preceding analysis to identify the important distinctions between this case and those upon which the majority relies, and to show that the "general rule" of remand, like most rules, must have some limitation to its application. Accordingly, rather than stretching the general rule of remand to fit each and every case, I believe that we should reserve application of that rule to cases in which remand would serve the policies behind the rule. Precisely because remand would *not* serve those policies here, I believe that this case requires us to explore the boundaries beyond which the general rule should no longer apply. I begin this exploration with several fundamental legal principles and, I hope, with due deference to common sense.

As a general matter of appellate law, a party's failure to timely raise an issue oper-

ates as a waiver of that issue in subsequent proceedings. For example, we routinely hold that the failure to properly assert an argument before the District Court precludes us from considering that argument on appeal. *See, e.g., United States v. Cullens,* 67 F.3d 123, 124 (6th Cir.1995) (holding that failure to object to a sentence before the sentencing court results in a waiver); *Banks v. Rockwell Int'l N. Am. Aircraft Operations,* 855 F.2d 324, 326 (6th Cir.1988) (finding that a "vague reference" to an issue before the District Court was insufficient to preserve that issue on appeal); *Thomas v. Arn,* 728 F.2d 813 (6th Cir.1984), *aff'd,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) (holding that a failure to file objections to a magistrate's report and recommendation operates as a waiver of appellate review). We have applied this doctrine of waiver against the government as well as private litigants. *See, e.g., United States v. Johnson,* 979 F.2d 396, 399 (6th Cir.1992). Even more directly on point, we have held that the failure to raise an issue during administrative proceedings precludes judicial review on that issue. *See, e.g., Harper v. Secretary of HHS,* 978 F.2d 260, 265 (6th Cir.1992); *Hix v. Director, OWCP,* 824 F.2d 526, 527 (6th Cir.1987).

In fact, this case goes beyond this general sort of waiver, and features a more specific failure to address a jurisdictional issue. Because the "carry out the contract" language of § 503 states a jurisdictional requirement, *see PPG,* 52 F.3d at 365–66, it would seem that the agency's failure here is no mere "waiver" that can somehow be cured upon remand. Where we discover on appeal, for example, that subject matter jurisdiction was lacking in the court below, we do not remand so as to afford the burdened party another opportunity to satisfy this fundamental requirement. Rather, we vacate the lower court's judgment and dismiss the case. *See, e.g., Allstate Ins. Co. v. Wayne County,* 760 F.2d 689, 697 (6th Cir.1985); *cf. Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 379, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981) ("[B]y definition, a jurisdictional ruling may never be made prospective only."). We do so regardless of whether the parties or the court below recognized the jurisdictional defect. *Allstate,* 760 F.2d at 691. Indeed,

because the elements necessary to establish jurisdiction are "not mere pleading requirements but rather an indispensable part of the plaintiff's case," *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992), we charge the plaintiff with both the knowledge of these elements and the burden to prove them. In this case, the DOL clearly was aware of its jurisdictional burden, but simply failed to carry or even address that burden.

The DOL contends, however, that such principles of waiver should not carry over from the judicial to the administrative context. I simply cannot agree. Although it might well be true that the doctrine of waiver is not completely coextensive across these two contexts—as in the cases relied upon by the majority, for example, where a reviewing court has identified for the first time an agency's legal error—I see no reason to make the distinction urged by the DOL under the facts of this case. First, we need not be concerned that a finding of waiver here will operate to bind the agency in future cases. *Cf. United States v. Stauffer Chemical Co.,* 464 U.S. 165, 173, 104 S.Ct. 575, 579–80, 78 L.Ed.2d 388 (1984) (rejecting, under the facts of that case, the argument that application of the doctrine of collateral estoppel against the government would "freeze the development of the law"). To the extent that we could be viewed as "binding" the DOL by refusing to remand, we would simply be binding that agency to adhere to its own acknowledged understanding of the law in the wake of *WMATA* and to follow its own revised regulations where they apply, as the DOL has already done in the eight cases remanded by the agency itself.

Next, as explained earlier, a finding of waiver in this case poses no threat that the judiciary might usurp a function that has been delegated to an agency. *Cf. McKart v. United States,* 395 U.S. 185, 193–95, 200, 89 S.Ct. 1657, 1662–63, 1666, 23 L.Ed.2d 194 (1969) (finding that the various purposes behind the administrative exhaustion doctrine would not be thwarted where there is "no significant interest to be served in having the [agency] decide the issue before it reaches the courts"). Thus, just as I conclude that

the usual rule of remand is not applicable here, I likewise conclude that the potential dangers of invoking the doctrine of waiver against an agency are wholly absent here.

Furthermore, I believe that the doctrine of laches, like the doctrine of waiver, militates against remand in this case. We have previously explained that the defense of laches requires proof of two elements: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Cleveland Newspaper Guild, Local 1 v. Plain Dealer Publishing Co.*, 839 F.2d 1147, 1153 (6th Cir.) (quoting *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961)), *cert. denied*, 488 U.S. 899, 109 S.Ct. 245, 102 L.Ed.2d 234 (1988). The Supreme Court has strongly suggested that this defense is available even where it is asserted against an agency. *See Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 373, 97 S.Ct. 2447, 2458, 53 L.Ed.2d 402 (1977); *see also EEOC v. Dresser Indus., Inc.*, 668 F.2d 1199 (11th Cir.1982) (following *Occidental's* suggestion and upholding application of the doctrine of laches to dismiss an action brought by the EEOC). Indeed, the Administrative Procedure Act expressly charges agencies with the duty to proceed with diligence: "With due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time*, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b) (emphasis added).

In this case, there can be no doubt that the agency demonstrated an appalling lack of diligence. Indeed, the DOL itself admits as much: "The ALJ's application of the invalidated regulation even after *WMATA*, and the Assistant Secretary's affirmance of the ALJ's decision without remanding for a determination of the 'carry out the contract' issue, raise questions of agency diligence."

(Appellant Br. at 25.) Where the DOL (1) utterly failed, despite an three-year window of opportunity, to recognize the implications of *WMATA* to the instant case; (2) issued *both* an ALJ's decision and a final affirmance without even addressing its jurisdictional burden to satisfy the "carry out the contract" requirement; (3) itself remanded eight other cases that were similarly affected by *WMATA*; and (4) has offered no justification or explanation for its conduct in this case, the DOL's lack of diligence is truly beyond question. *Cf. Cleveland Newspaper Guild*, 839 F.2d at 1154 (finding lack of diligence because of the plaintiffs' "specific knowledge" of their right to institute an action, and because no justification was offered for their failure to act).

Next, as the District Court recognized, Cissell would suffer a "manifest injustice" if the DOL were afforded yet another opportunity to carry its jurisdictional burden. The administrative complaint against Cissell derives from events that occurred in 1983 and 1984, well over ten years ago. Plainly, witnesses will be unavailable or their memories will have faded, and evidence will be stale or altogether lost. *Cf. Cleveland Newspaper Guild*, 839 F.2d at 1154 ("No one seriously disputes the district court's finding that defendant has suffered prejudice in the form of lost witnesses and documentary evidence.") Moreover, the administrative proceedings themselves dragged on for nearly nine years. During this time, Cissell was faced with the threat that its government contracts would be cancelled, and that it would be barred from further federal contract work.[7] Under these circumstances, it is clear that Cissell would be prejudiced by a remand for further administrative proceedings.

I believe, therefore, that remand would be highly inappropriate under the facts of this case. Whether the agency's deficient performance is viewed as operating as a waiver of

---

7. The Assistant Secretary's final decision on February 14, 1994, provided that Cissell's government contracts would be cancelled and Cissell would be subject to debarment proceedings unless the company complied with the decision within 60 days. Although this decision was nearly nine years in the making, and although Cissell almost immediately sought judicial review of this decision, the DOL nevertheless denied Cissell's request for a stay of debarment proceedings pending judicial review. However, the District Court subsequently issued a temporary restraining order and preliminary injunction enjoining the DOL from cancelling any of Cissell's federal contracts or instituting debarment proceedings.

the "carry out the contract" issue, or is instead viewed as supporting Cissell's assertion of the defense of laches, the result is the same: the agency has, in my judgment, forfeited any further opportunity to pursue its complaint against Cissell. Although remand may very well be the most suitable remedy in most cases of agency error, I cannot agree that this remedy is suitable under the egregious circumstances with which we are here confronted.[8]

Indeed, if we sanction remand here, it is difficult to imagine any circumstance under which an agency would not be given a second or third bite at the same apple. In my view, if we agree under the present circumstances to overlook the DOL's mistakes, we effectively announce a *per se* rule of remand, no matter how negligent, dilatory, or injurious the agency's conduct. But even more fundamentally, common sense and fairness should dictate that, in the absence of any legal or policy reason to remand, a governmental agency that has repeatedly "dropped the ball" should not be afforded preferential treatment which no private litigant would enjoy. Remand here would, in my judgment, simply encourage agency arrogance and indifference to the rights of private parties.

## IV.

In sum, although the path of least resistance might well be to simply invoke the "usual" remedy of remand, I believe that we must ultimately recognize that, *at some point*, an agency forfeits its entitlement to "try again" and correct its own patent legal errors. As explained by the D.C. Circuit Court of Appeals:

"[T]here must be a 'rule of reason' to govern the time limit to administrative proceedings. Quite simply, excessive delay saps the public confidence in an agency's ability to discharge its responsibilities and creates uncertainty for the parties, who must incorporate the potential effect of possible agency decisionmaking into future plans." Moreover, unjustifiable delay may undermine the statutory scheme and could inflict harm on individuals in need of final action.

*Cutler v. Hayes*, 818 F.2d 879, 896–97 (D.C.Cir.1987) (footnotes omitted) (quoting *Potomac Elec. Power Co. v. ICC*, 702 F.2d 1026, 1034 (D.C.Cir.1983)). I believe the DOL's prolonged failure here to address the "carry out the contract" issue violates any such "rule of reason," and renders remand for further proceedings wholly inappropriate. Accordingly, I dissent.

---

8. Nor, in my judgment, do we need to be overly concerned that Larry Brown, the individual on whose behalf the DOL is proceeding against Cissell, might be unfairly deprived of a legitimate claim. Beyond the fact that an agency's authority to represent an individual must rest upon a proper showing of jurisdiction, Mr. Brown himself has brought suit against Cissell on two separate occasions, apparently based upon the same facts underlying this case, albeit under different legal theories. In addition, he received worker's compensation benefits for his injury.