**Blaine P. THOMPSON, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 87–7509.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 15, 1989.

Decided Sept. 8, 1989.

Stephen M. Kohn, Kohn, Kohn & Colapinto, P.C., Washington, D.C., for petitioner.

Wendy B. Bader, Atty. for U.S. Dept. of Labor, Washington, D.C., for respondent.

Before POOLE, BOOCHEVER and WIGGINS, Circuit Judges.

BOOCHEVER, Circuit Judge:

## OVERVIEW

Blaine P. Thompson (Thompson) appeals the Secretary of Labor's ("Secretary") order dismissing his complaint with prejudice after Thompson and the Arizona Public Service Company (APS) reached an agreement settling Thompson's claims under section 210 of the Energy Reorganization Act (ERA), 42 U.S.C. section 5851. We have jurisdiction pursuant to 42 U.S.C. section 5851(c), and we reverse and remand.

## FACTS

Thompson was a security shift captain at the Palo Verde nuclear power plant operated by APS. Thompson filed a complaint with the Nuclear Regulatory Commission alleging that APS failed to investigate properly an alleged rape committed by one of APS' security guards. After he filed this complaint, Thompson allegedly was demoted, transferred, and discriminated against in his employment.

In 1986, Thompson filed three complaints with the Department of Labor alleging that his job changes were illegal retaliatory acts under the "nuclear whistleblower protection law", codified at 42 U.S.C. section 5851. In 1987, the parties attended a pre-hearing conference and Administrative Law Judge Karst (ALJ) encouraged the parties to settle. The parties began settlement negotiations.

On April 10, 1987, APS' attorneys sent a letter and proposed settlement agreement to Stephen Kohn (Thompson's attorney), and a copy to Judge Karst. APS' proposed agreement provided that:

In consideration for the Respondent's promises set forth above, Complainant and his representatives, GAP and CREE, by their execution of this Agreement, hereby withdraw Complainant's requests for hearing on the above-referenced complaints *and further request the Secretary of Labor to terminate these proceedings with prejudice pursuant to this Agreement.*

On April 14, 1987, Kohn sent a letter and counter-proposal to APS' attorneys, with a copy sent to Judge Karst. In this letter, Kohn stated that he had "modeled this settlement upon the successful settlement of the Hugh Kaufman v. EPA case." In *Kaufman v. EPA*, No. 83–CER–1 (Dep't Labor 1983), the Secretary signed an order that approved the parties' settlement agreement but was silent as to the dismissal of the complaint. Paragraph two stated that "the agreement settles, *without prejudice,* all claims that Mr. Thompson had, or may have had, under section 210 of the ERA...." (emphasis added).

In a letter dated April 16 one of APS' attorneys responded to Kohn's counter-proposal, however, this letter was never brought to the attention of the Secretary either before the initial decision or in Thompson's motion for reconsideration.[1]

---

**1.** In this letter, William Hayden, APS' attorney, indicated that a dismissal without prejudice was

In the motion for reconsideration, however, Thompson stated that:

> There were settlement discussions regarding this issue, with Respondent desiring the case be dismissed "with prejudice", and Complainant seeking a dismissal "without prejudice."

In a letter dated April 29 and addressed to Kohn, however, Hayden stated that:

> Consistent with Judge Karst's encouragement to resolve linguistic disputes, I have indicated that I will not insist upon the inclusion of the phrase "with prejudice" in paragraph 2. I expect the same compromise from you and will not agree to the inclusion of the phrase "without prejudice". The language contained in my April 27th draft should fully satisfy your expressed concerns by expressly acknowledging that the settlement shall not be construed as an adjudication on the merits for or against any party.

Judge Karst also was sent a copy of this letter.

On May 15, 1987, the parties signed the final settlement agreement.[2] The agreement states: "[t]his Settlement Agreement constitutes a final and comprehensive resolution of Mr. Blaine Thompson's complaints ... filed under section 210 of the Energy Reorganization Act (ERA)." Paragraph One provides that Thompson voluntarily withdraws his DOL complaints, and agrees not to file any additional complaints under the ERA based on the same facts. Paragraph two provides that: "[t]his settlement shall not be construed as an admission of any wrongdoing by any of the parties, *nor shall it be construed as an adjudication on the merits* for or against either party." (emphasis added). In the final settlement agreement, Paragraph two is now silent as to the dismissal of the complaints.

The parties submitted a "recommended decision and order" to the ALJ for approval with the settlement agreement. This order was also silent as to whether Thompson's complaints should be dismissed. This order only provided that the ALJ approved the settlement agreement, and was similar to the settlement order signed by the Secretary in *Kaufman v. EPA.*

## PROCEEDINGS BELOW

The ALJ signed the parties' Recommended Decision and Order approving the settlement agreement. Pursuant to 29 C.F.R. section 24.6(a), the recommended decision was submitted to the Secretary for a final order. On September 17, 1987, the Secretary issued the final order approving the settlement agreement. The Secretary deleted the ALJ's statement that the agreement constituted "findings of fact and conclusions of law". The Secretary reasoned that findings of fact were unnecessary because: 1) the complaint was settled by voluntary compromise of the parties; and 2) the agreement provided that it was not an admission of wrongdoing by any party or an adjudication on the merits. The Secretary added, however, that the case was dismissed *with prejudice.*

Thompson filed a Motion for Reconsideration with the Secretary objecting to the dismissal with prejudice. Thompson brought several letters to the Secretary's attention that were not part of the certified official record forwarded to the Secretary for consideration in the initial decision.[3] APS opposed Thompson's motion for reconsideration, and claimed that the parties never agreed as to the form the Secretary's order should take.

Thompson filed a timely petition for review in this court, but all proceedings were stayed pending the Secretary's decision on

---

unacceptable to APS. [ER 71] A copy of this letter was sent to the ALJ but was not forwarded to the Secretary as part of the official administrative record. Since this letter was never brought to the attention of the Secretary before the decision it is not properly part of the record on appeal. Because we remand this case, the Secretary should consider this letter as relevant evidence of the parties' negotiations regarding this issue and their intent.

**2.** The full agreement is attached as an appendix to this opinion.

**3.** These letters included: 1) the April 10 letter from APS to Kohn; and 2) the April 29 letter from Hayden to Kohn. All of these letters were addressed directly to Judge Karst or he received copies of them.

Thompson's motion for reconsideration. The Secretary denied Thompson's motion, and this court lifted the stay of proceedings in May of 1988.

## DISCUSSION

*Jurisdiction and Standard of Review*

The Secretary of Labor had jurisdiction over Thompson's ERA claims pursuant to 42 U.S.C. section 5851(b). This court has jurisdiction over this appeal under 42 U.S.C. section 5851(c). Pursuant to section 5851(c), we review the Secretary's decision under the Administrative Procedure Act, 5 U.S.C. section 706. "We will set aside the agency decision if it is 'unsupported by substantial evidence' or 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *Mackowiak v. University Nuclear Sys., Inc.,* 735 F.2d 1159, 1162 (9th Cir.1984)(quoting 5 U.S.C. section 706(2)(A), (E)). To determine whether an agency decision was arbitrary and capricious, the court "must consider whether the [Secretary's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971).

## I. *The Administrative Record*

■ Initially, the parties dispute whether certain letters relied on by Thompson were part of the administrative record.[4] Generally, judicial review of agency action is limited to review of the record on which the administrative decision was based. *See, e.g., id.* at 420, 91 S.Ct. at 825. The reviewing court can go outside the administrative record but should consider such evidence relevant to the substantive merits of the agency decision only for the limited purpose of background information or to determine whether the agency considered all the relevant factors. *See Asarco, Inc. v. EPA,* 616 F.2d 1153, 1160 (9th Cir.1980); *see also Love v. Thomas,* 858 F.2d 1347, 1356 (9th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1932, 104 L.Ed.2d 403

(1989). If the court determines that the agency did not consider all the relevant factors then it should remand the matter to the agency "and not compensate for the agency's dereliction by undertaking its own inquiry into the merits." *Asarco,* 616 F.2d at 1160.

■ The whole administrative record, however, "is not necessarily those documents that the *agency* has compiled and submitted as 'the' administrative record." *Exxon Corp. v. Department of Energy,* 91 F.R.D. 26, 32 (N.D.Tex.1981) (emphasis in original). "The 'whole' administrative record, therefore, consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Id.* at 33 (emphasis added); *see also Animal Defense Council v. Hodel,* 840 F.2d 1432, 1436 (9th Cir.1988), *corrected,* 867 F.2d 1244 (1989); *National Wildlife Federation v. Burford,* 677 F.Supp. 1445, 1457 (D.Mont.1985).

■ The Secretary argues that these letters should not be considered part of the record on review because they were not before the ALJ. The Secretary's position is without merit. The correspondence was sent to the ALJ, who, at the very least, indirectly considered the settlement negotiations when he approved the recommended order that was silent as to the mode of dismissal. 29 C.F.R. section 24.5(e)(2) provides in part: "All exhibits and other pertinent documents or records, either in whole or in material part, introduced as evidence, shall be marked for identification and incorporated into the record." There was no formal hearing before the ALJ. Under these circumstances all relevant correspondence concerning the settlement negotiations should have been included as part of the record forwarded by the ALJ to the Secretary. *See* 29 C.F.R. § 24.6(a).

This court, however, is reviewing the *Secretary's* decision dismissing Thompson's complaints with prejudice, not the ALJ's recommended decision. The Supreme Court has stated that judicial review

---

**4.** These letters are listed in footnote 3 of this opinion.

is to be based on the full administrative record before the agency *when it made its decision.* *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. at 420, 91 S.Ct. at 825. Consequently, the critical inquiry is whether these letters were before the Secretary at the time of the decision.

Although these letters were not originally forwarded to the Secretary prior to the initial order dismissing the complaints with prejudice, Thompson submitted the letters in footnote 3 *supra,* to the Secretary in his motion for reconsideration. At oral argument the Secretary's counsel stated that the Secretary considered APS' opposition to Thompson's motion and concluded that the parties never agreed that Thompson could bring other suits based on the same facts. These materials were considered by the Secretary, either directly or indirectly, during Thompson's motion for reconsideration, and consequently are properly part of the administrative record. Accordingly, this court can consider these letters in determining whether the Secretary's decision was "arbitrary and capricious" or unsupported by substantial evidence.[5]

## II. *The Secretary's Decision*

Section 210 of the ERA, codified at 42 U.S.C. section 5851, prohibits an employer in the nuclear industry from discriminating or retaliating against an employee who files a complaint with the Nuclear Regulatory Commission. 42 U.S.C. § 5851 (1982). Section 5851(b) requires that the Secretary investigate all complaints filed under this section. The Secretary must approve all settlement agreements, however "[t]he Secretary may not enter into a settlement terminating a proceeding on a complaint without the participation and consent of the complainant." 42 U.S.C. § 5851(b)(2)(A). Thompson argues that the Secretary's decision dismissing his complaints with prejudice was arbitrary and capricious because the Secretary added a condition that the parties had expressly failed to agree upon.

■ Initially we note that the settlement agreement is silent as to any dismissal of the claims, either with or without prejudice. In view of this ambiguity, extrinsic evidence is admissible to construe the agreement. *See NLRB v. United Assoc. of Journeymen and Apprentices of the Plumbing & Pipefitting Ind., Local 741,* 704 F.2d 1164, 1166 (9th Cir.1983)(extrinsic evidence admissible because the meaning of the agreement was not clear on its face). The correspondence during the settlement negotiations clearly demonstrates that APS wanted a dismissal with prejudice whereas Thompson's attorney wanted a dismissal without prejudice. The parties compromised and agreed that the order would be silent as to the dismissal of the complaint. Although the parties agreed to a final settlement of Thompson's claims under section 210 of the ERA, the agreement specifically provides that it shall not be construed as an adjudication on the merits. The only conceivable relevance of such a provision is to preclude any argument that res judicata bars a subsequent claim not brought under section 210. The Secretary's decision dismissing Thompson's complaints might be considered an adjudication on the merits for purposes of res judicata. *See e.g., Cochise Hotels v. Douglas Hotel Operating Co.,* 83 Ariz. 40, 316 P.2d 290, 295 (1957)("A decree of dismissal with prejudice ... is a final determination. It has the same effect as an adjudication on the merits of the case." (citations omitted)). The Secretary's decision provides APS with a possible res judicata defense in any later suit between the parties even one based on claims other than under section 210.

■ The parties agreed to model their settlement on the earlier *Kaufman v. EPA* case where the Secretary had merely signed an order approving the settlement. The Secretary clearly did not have the power under section 5851(b) to force Thompson to accept settlement of his ERA claims.

**5.** Thompson brought to this court's attention a letter dated April 16 from William Hayden to Stephen Kohn which was never brought to the attention of the Secretary before this appeal. *See supra,* footnote 1. A copy of this letter, however, was sent to the ALJ. Because this letter was never brought to the attention of the Secretary before the appeal, we have not considered its contents in this appeal.

The Secretary argues that the dismissal with prejudice was permissible because the order would only prevent Thompson from filing any further claims under section 210 of the ERA based on the same events. The Secretary's position ignores the possible res judicata effect of a dismissal with prejudice.

Many states define a cause of action to include all claims arising out of the same events. *See, e.g.* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4407, p. 62 (1981) (Restatement of Judgments and some courts are moving to a "transactional test" for res judicata or claim preclusion); *see also Bill v. Gossett*, 132 Ariz. 518, 647 P.2d 649, 653 (1982)("The determinative test asks whether the claims in each case depend upon the same essential facts for their proof.").

Courts have abandoned the earlier position that res judicata does not apply to administrative proceedings. *See United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966); *Painters Dist. Council v. Edgewood Contracting Co.*, 416 F.2d 1081, 1084 (5th Cir.1969)(a decision of the NLRB was held res judicata for purposes of a later suit for damages); *cf. Pearson v. Williams*, 202 U.S. 281, 26 S.Ct. 608, 50 L.Ed. 1029 (1906) (decisions of the executive branch cannot constitute res judicata). Although commentators and most decisions have limited the res judicata effect of administrative decisions to facts and issues actually litigated, *see Utah Construction*, 384 U.S. at 422, 86 S.Ct. at 1560 ("When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose."), states are free to expand the scope.

Given the uncertain scope of the res judicata effect of administrative proceedings, agencies should be careful when they dismiss cases within their limited jurisdiction. This is particularly true when the parties have voluntarily settled the claims, expressly negotiated for the manner of dismissal, and the agreement provides that the settlement should not be construed as an adjudication on the merits. *See Gardiner v. A.H. Robins Co.*, 747 F.2d 1180, 1189 (8th Cir.1984)(court ordered notation entered by district judge deleted because "the effect of [the Judge's] notation was ... to convert the document [settlement] into something the parties neither anticipated nor negotiated.") The Secretary's power to approve settlement agreements does not include the power to force employees to accept a settlement. The Secretary's dismissal with prejudice added a material condition to the parties' agreement, and provided APS with a benefit it was unable to secure by negotiation.

Also, the Secretary was aware that the parties were relying on the earlier decision in the *Kaufman v. EPA* case, where the Secretary had signed an order approving settlement but was silent as to the mode of dismissal. It is an elemental tenet of administrative law that an agency must either conform to its own precedents or explain its departure from them. *See, e.g., Secretary of Agriculture v. United States*, 347 U.S. 645, 653, 74 S.Ct. 826, 831, 98 L.Ed. 1015 (1954). In this case, the Secretary has advanced no reason for the refusal to follow numerous cases where the settlement agreement was simply approved with no mention of dismissal with prejudice.

■ The Secretary could have only two possible concerns with the mode of dismissal. The Secretary could have been concerned about Thompson bringing other claims under section 210 of the ERA. The settlement agreement, however, precludes Thompson from filing any additional claims under section 210 based on the same events. The only other concern the Secretary could have had is that the settlement agreement was not "fair and reasonable" to APS unless the amount paid was to settle all claims arising from APS' allegedly illegal conduct. At oral argument, counsel for the Secretary stated that the Secretary did not believe that the order precluded Thompson from bringing any claims other than ones under the ERA. Consequently, Thompson argues that this

court can modify the order to delete this condition because the Secretary implicitly found that the agreement would be fair and reasonable without this condition. Section 210, however, authorizes the Secretary, and not this court to approve all settlement agreements. The Supreme Court has warned courts not to intrude on administrative functions. *See, e.g., FPC v. Idaho Power Co.,* 344 U.S. 17, 20, 73 S.Ct. 85, 86, 97 L.Ed. 15 (1952).

In *Idaho Power,* the Supreme Court reversed a court of appeals decision that deleted some conditions from a license granted by the FPC. The Supreme Court stated:

> When the court decided that the license should issue without the conditions, it usurped an administrative function. There doubtless may be situations where the provision excised from the administrative order is separable from the remaining parts or so minor as to make remand inappropriate. But the guiding principle, violated here, is that the function of the reviewing court ends when an error of law is laid bare. At that point the matter once more goes to the [agency] for reconsideration.

*Id.* In this case, the Secretary could decide not to approve the settlement agreement because it is not fair and reasonable without the dismissal with prejudice. We do not believe the matter is so minor that a remand would be inappropriate. Accordingly, the case is remanded to the Secretary for further proceedings.[6]

### III. *Attorneys Fees On Appeal*

Thompson argues that he is entitled to attorney's fees for this appeal under either the Equal Access to Justice Act, 28 U.S.C. section 2412 or under the ERA, 42 U.S.C. section 5851. Since we find that Thompson is entitled to attorney's fees under the EAJA, we need not reach the question whether section 5851 authorizes an award of attorney's fees to an employee appealing an order of the Secretary. *Cf. DeFord v. Secretary of Labor,* 715 F.2d 231 (6th Cir. 1983) (section 5851 does not authorize the court of appeals to award of attorneys fees to an employee appealing an order of the Secretary).

The EAJA provides that a court may award attorney's fees to a prevailing party in any civil action, including a petition for judicial review of agency action against the United States. *See National Wildlife Federation v. FERC,* 870 F.2d 542, 543 (9th Cir.1989). Fees are not available, however, if the government's position is "substantially justified." 28 U.S.C. § 2412(d)(1)(A).

■ "[A] party must win 'some relief on the merits of his claims'" to be a prevailing party. *National Wildlife Federation,* 870 F.2d at 545 (quoting *Hanrahan v. Hampton,* 446 U.S. 754, 757, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980)(per curiam)). The mere attainment of a remand will not ordinarily support an award of attorney's fees. *Id.* In this case Thompson did win some relief on the merits of his claim. We agreed that the Secretary could not impose a material condition to the parties' settlement agreement, and concluded that the letters were properly part of the administrative record on appeal. Consequently, we find that Thompson is a prevailing party within the meaning of section 2412.

■ We also find that the Secretary's position was not substantially justified. "The Ninth Circuit 'has long applied a test of reasonableness in determining whether the government's position was substantially justified.'" *Kali v. Bowen,* 854 F.2d 329, 331 (9th Cir.1988) (quoting *Oregon Environ. Council v. Kunzman,* 817 F.2d 484, 498 (9th Cir.1987)). In 1985, Congress reenacted the EAJA, and the House Committee Report indicated that more than mere reasonableness was needed to satisfy the

---

**6.** Thompson requested that we take judicial notice of the fact that he has filed a lawsuit in Arizona state court against APS and others alleging violations of state public policy, negligent administration of polygraph tests, interference with business relationships, and intentional infliction of emotional distress. He has attached to his Reply Brief a copy of APS' answer alleging res judicata based on the Secretary's dismissal with prejudice. On remand, the Secretary should consider that APS has asserted a res judicata defense to the state court action.

"substantially justified" test. The Supreme Court rejected the argument that this statement in the legislative history changed the applicable test. *Pierce v. Underwood,* —— U.S. ——, 108 S.Ct. 2541, 2550–51, 101 L.Ed.2d 490 (1988). Consequently, Thompson is not entitled to attorney's fees if there was a reasonable basis in law and fact for the Secretary's position. *See id.* 108 S.Ct. at 2550.

 In *Kali,* this court stated that:

The inquiry into the existence of substantial justification ... must focus on two questions: first, whether the government was substantially justified in taking its original action; and, second, whether the government was substantially justified in defending the validity of the action in court.

*Kali,* 854 F.2d at 332; *see also National Wildlife Federation,* 870 F.2d at 546. Although the Secretary's initial action in dismissing the complaint on the abbreviated record may have been substantially justified, the decision to litigate this position after the motion for reconsideration was not. The Secretary never provided reasons for failing to abide by previous decisions where settlement agreements were approved without dismissing the complaints. Likewise, the Secretary was not substantially justified in refusing to consider that the parties had expressly bargained whether to have a dismissal with prejudice.[7]

## CONCLUSION

The Secretary's dismissal of Thompson's claim with prejudice is reversed and this matter is remanded for further proceedings in accordance with this opinion. Thompson is awarded his reasonable attorney's fees to be determined by this court.

REVERSED AND REMANDED.

## APPENDIX

This Settlement Agreement constitutes a final and comprehensive resolution of Mr. Blaine Thompson's complaints against Respondent Arizona Public Service Company/Arizona Nuclear Power Project (APS/ANPP) to the Department of Labor (DOL) of February 27, 1986, March 25, 1986, and September 9, 1986, filed under Section 210 of the Energy Reorganization Act (ERA). Submitted simultaneously herewith is a joint motion to the Administrative Law Judge (ALJ) requesting approval of this full and final Settlement Agreement of the parties' claims.

1. Mr. Thompson voluntarily withdraws his DOL complaints of February 27, 1986, March 25, 1986, and September 9, 1986, and agrees not to file any additional or supplemental claims under Section 210 of the ERA against APS/ANPP regarding any event or incident which occurred on or before the date of execution of this Settlement Agreement.

2. This settlement shall not be construed as an admission of any wrongdoing by any of the parties, nor shall it be construed as an adjudication on the merits for or against either party. The Agreement settles all claims that Mr. Thompson had, or may have had, under Section 210 of the ERA, 42 U.S.C. § 5851, against Respondent from March 1, 1982 until and through the date this settlement is ratified by the parties, and Complainant agrees not to file Section 210 charges based on any conduct by Respondent during this time period.

3. Within 10 days of the parties' execution of this Agreement, Respondent will place $40,000 in an interest bearing insured money market escrow account. Within two working days of the date that Respondent receives official notice that the Secretary of Labor has approved this settlement, Respondent will pay Complainant $30,000 out of the escrow account and all interest accrued to date. The remaining $10,000 will be paid to Complainant in three equal annual installments of $3,333.33 on June 1, 1988, June 1, 1989, and June 1, 1990, together with accrued interest to date, subject to the following conditions. First, in order to be

---

**7.** 28 U.S.C. section 2412(d)(1)(C) generally limits the attorneys fee recoverable to $75.00 per hour. Thompson has not submitted any schedule detailing the number of hours spent on this appeal. Thompson shall file an appropriate motion with the Clerk of this court within two weeks from the date this opinion is filed. The Secretary shall have two weeks to respond.

entitled to any installment or portion thereof, Complainant must have remained employed with Respondent during the entire twelve months preceding the installment due date. Second, if prior to any installment due date, Complainant has voluntarily transferred out of the position provided for in paragraph 4 and into a position that provides a salary range comparable to that of Security Shift Captain at Palo Verde, Respondent will not be obligated to pay the remaining installment(s). The foregoing lump sum payments are in settlement of all claims settled by this Agreement, including claims for costs and attorneys fees.

4. Respondent shall transfer Thompson to a position comparable in salary to his position of Security Shift Captain while at Palo Verde. For this purpose, Respondent will assume that Thompson would have received a "Superior" performance review at Palo Verde in December, 1986 and the corresponding 6.5% increase in salary. The parties agree that such a comparable position is Revenue Protection Investigator in the Energy Diversion Department at the salary of $3,404.00 per month. Complainant's salary will be administered pursuant to Respondent's normal salary administration program. Thompson will not receive a performance review for the period from the date of his transfer to the APS Security Department until his transfer to the Energy Diversion Department. Complainant forever foregoes his rights to reinstatement to any position within the Palo Verde nuclear facility.

5. Respondent will not retaliate or discriminate against Thompson because he filed Section 210 charges against Respondent.

6. Respondent shall permanently remove from Complainant's personnel file or any other file related to the Complainant:

a) Complainant's written performance review dated January 15, 1986, and substitute in its place the performance review prepared by Michael Deblo dated December 8, 1985, fully executed by appropriate Company officials.

b) Any and all references to the February 1986 investigation in to charges by Officers Reighard and Johnson.

c) The two disciplinary warnings issued to Complainant since his transfer to the APS Security Department.

d) Any reference to the reasons for Complainant's temporary or permanent transfer outside of the ANPP Security Department.

e) The "confidential" memorandum file prepared by Doeg Nelson concerning Blaine Thompson dated January 15, 1986.

7. It is expressly understood that in no more than seven days after the execution of this Agreement by both parties, Thompson will be tentatively transferred to the Energy Diversion Department pursuant to paragraph 4 above. Said transfer shall become final upon the approval of the Settlement Agreement by the Secretary of Labor. All other obligations to perform the covenants contained herein are contingent upon the Secretary of Labor approving the parties' Settlement Agreement.

8. Respondent agrees that in responding to future employment inquiries, consistent with its personnel policies, it will confirm only Thompson's dates of employment, rates of pay, and job titles. For purposes of disclosing Thompson's rate of pay, Respondent's records will reflect that he did not receive a reduction in salary when he was transferred in August, 1986. Respondent further agrees to advise Thompson's former supervisors (i.e., D. Nelson, F. Kroll, G. Tranburg, W. Fernow & C. Kelly) that, consistent with Respondent's policy, all employment inquiries received by them should be referred to the Personnel Department for response.

9. This Agreement constitutes the sole and entire agreement between the parties hereto and supersedes any and all understandings and agreements made prior hereto. There are no collateral understandings, representations, or agreements other than those contained herein. It is understood and agreed that execution of this Agreement by Respondent is not to be construed as an admission of liability on its part to Complainant, but is a compromise and settlement of disputed claims.