FRIENDS OF THE WILD SWAN; Alliance for the Wild Rockies; Ecology Center, Inc.; American Wildlands; Montana Environmental Information Center, Inc., Plaintiffs—Appellees,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; Carol M. Browner, administrator; Jack McGraw, Region VIII EPA administrator, Defendants—Appellants,

and

State of Montana, ex rel. Department of Environmental Quality; Montana Wood Products Association; Montana Stockgrowers Association; Montana Farm Bureau, Defendants–Intervenors.

Friends of the Wild Swan; Alliance for the Wild Rockies; Ecology Center, Inc.; American Wildlands; Montana Environmental Information Center, Inc., Plaintiffs—Appellees,

v.

United States Environmental Protection Agency; Carol M. Browner, administrator; Jack McGraw, Region VIII EPA administrator;, Defendants—Appellees,

State of Montana, ex rel. Department of Environmental Quality, Defendant-intervenor—Appellant,

and

Montana Wood Products Association; Montana Stockgrowers Association; Montana Farm Bureau, Defendants–Intervenors.

Friends of the Wild Swan; Alliance for the Wild Rockies; Ecology Center, Inc.; American Wildlands; Montana Environmental Information Center, Inc., Plaintiffs—Appellees,

v.

United States Environmental Protection Agency; Carol M. Browner, administrator; Jack McGraw, Region VIII EPA Administrator;, Defendants—Appellees,

Montana Wood Products Association; Montana Stockgrowers Association; Montana Farm Bureau, Defendants–Intervenors—Appellants,

and

State of Montana, ex rel. Department of Environmental Quality, Defendant–Intervenor.

No. 00–36001, 00–36004 and 00–36013.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 8, 2003.

Decided July 25, 2003.

Before: REAVLEY,* TASHIMA, and PAEZ, Circuit Judges.

## MEMORANDUM **

In this action, brought by five environmental groups (collectively "Friends") under 33 U.S.C. § 1313, the district court found that the Environmental Protection Agency ("EPA") violated the Administrative Procedure Act ("APA") and the Clean Water Act ("CWA") by arbitrarily and capriciously approving Montana's 1998 list of water quality limited segments ("WQLSs") and corresponding total maximum daily loads ("TMDLs") submitted to EPA pursuant CWA § 303(d). The district court remanded to the EPA with a deadline for establishment of TMDLs for all WQLSs and provided that any failure to meet the deadline would constitute a final agency action. The district court also required that TMDLs be established for all WQLSs identified in Montana's 1996 submission and prohibited the issuance of new discharge permits until Montana develops its TMDLs. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm in part, reverse in part, and remand.

We review a district court's grant of summary judgment de novo. See Clicks

*The honorable Thomas M. Reavley, Senior Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation.

Billiards Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1257 (9th Cir.2001). We review the district court's selection of equitable remedies for an abuse of discretion. See Grosz–Salomon v. Paul Revere Life Ins. Co., 237 F.3d 1154, 1163 (9th Cir.2001). A district court abuses its discretion when it commits an error of law, exceeds its authority or fails to consider appropriate factors in fashioning an equitable remedy. See Sony Computer Entertainment, Inc. v. Connectix Corp., 203 F.3d 596, 602 (9th Cir.2000). Because the parties are familiar with the record, we recite the facts and procedural background only to the extent necessary to explain our ruling.

## ANALYSIS

### I. Final Agency Action

■ Appellants argue that Friends lack statutory standing because they did not challenge a final agency action. Two conditions render an action final:

> First, the action must mark the "consummation" of the agency's decision-making process–it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow."

Bennett v. Spear, 520 U.S. 154, 177, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (citations omitted). This requirement is easily met in this case. The EPA's June 23, 1998, order was accompanied by a statement of reasons explaining the EPA's analysis and the basis for approval. The order was not tentative or interlocutory. See id. Legal consequences flowed from the EPA's decision to approve the list.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir. R. 36–3.

For example, disapproval would require the EPA to identify the WQLSs and the TMDLs. The list and TMDLs must be incorporated into the State's continuing planning process under 33 U.S.C. § 1313(e), which must also be approved by the EPA. If the EPA does not approve the list and continuing planning process, permits will not issue. *See* 33 U.S.C. § 1313(e)(2) ("[The] Administrator shall not approve any State permit program [NPDES/MPDES] ... for any State which does not have an approved continuing planning process."). The approval of the list also sets parameters for future licenses, which must comply with TMDLs.

Appellants argue that the order was not final for Friends' purposes because it did not address the long-term schedule for TMDL development or Montana's failure to develop all necessary TMDLs. The district court found EPA's approval arbitrary and capricious precisely because it failed to consider these issues. This does not mean that Friends' challenge is based upon a failure to act.[1] Such an approach would preclude review of agency approvals that overlook an important factor. We reject Appellants' statutory standing argument.

## II. Remedy

### A. The District Court's Equitable Powers

Appellants argue that, if EPA erred in approving the 1998 list, the appropriate remedy was to remand. The district court, however, did remand. It also employed its equitable powers to shape the

parameters of the remand order. The only question is whether these parameters exceeded the court's powers.

While courts may not "usurp[ ] an administrative function, *FPC v. Idaho Power Co.*, 344 U.S. 17, 20, 73 S.Ct. 85, 97 L.Ed. 15 (1952) (*"Idaho Power"*), they retain equitable powers to shape an appropriate remedy. *See West. Oil & Gas Ass'n v. EPA*, 633 F.2d 803, 813 (9th Cir.1980) (*"Western Oil"*). Equitable considerations are appropriate in reviewing agency decisions under the APA and crafting a remedy. *See Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343 (9th Cir.1995) ("The court's decision to grant or deny injunctive or declaratory relief under APA is controlled by principles of equity."); *Sierra Pacific Indus. v. Lyng*, 866 F.2d 1099, 1111 (9th Cir.1989) ("Our inquiry into the district court's authority to order equitable relief begins with the well-established principle that 'while the court must act within the bounds of the statute and without intruding upon the administrative province, it may adjust its relief to the exigencies of the case in accordance with the equitable principles governing judicial action.' " (quoting *Ford Motor Co. v. NLRB*, 305 U.S. 364, 373, 59 S.Ct. 301, 83 L.Ed. 221 (1939))).

■ In waiving sovereign immunity, the APA specifically anticipates injunctive relief without limiting it to specific sections. *See* 5 U.S.C. § 702. Hence, we reject Appellants' argument that, under the APA, 5 U.S.C. § 706(2), courts are not author-

---

1. Because Friends did not appeal the rejection of their constructive submission theory, Appellants' reliance on cases challenging agency inaction is misplaced. *See ONRC Action v. Bureau of Land Management*, 150 F.3d 1132, 1136 (9th Cir.1998) (finding no final action where the plaintiffs challenged the failure to institute a moratorium on logging because there was "no identifiable agency or-

der"); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890–93, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (refusing to classify as final agency action the operational processes of the Bureau of Land Management because plaintiffs pointed to no single order, but rather requested "wholesale improvement of this program").

ized to impose injunctive relief. The only case cited in support this reading of § 706(2), *Thompson v. United States Dep't of Labor*, 885 F.2d 551 (9th Cir.1989), holds only that a court may not simply revise the agency's order without a remand. *Id.* at 555. The presence of § 702, which specifically identifies injunctive relief, "militates against the conclusion that Congress intended to deny courts their traditional equitable discretion in enforcing the statute." *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 316, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982).[2]

We have previously found remand with specific instructions to be an appropriate remedy for APA violations. *See e.g., Western Oil*, 633 F.2d at 812–13 (Leaving in place, rather than vacating, designations created without notice and comment and rather, "guided by the authorities that recognize a reviewing court has discretion to shape an equitable remedy," remanding with instructions to provide an opportunity for comment). We have also previously permitted the imposition of deadlines on remand. *See Abramowitz v. United States EPA*, 832 F.2d 1071, 1072–73 (9th Cir. 1987). We reject Appellants' argument that the district court was without equitable power to shape its remand order.

## B. Appropriateness of District Court's Deadline

The district court supported its schedule with the following finding:

The CWA declares as a national goal the elimination of pollutant discharges into navigable waters by the year 1985. *See* 33 U.S.C. § 1251(a)(1). To meet this goal, the CWA required states to promptly submit TMDLs for all WQLSs, with initial lists of TMDLs due in 1979. *See* 33 U.S.C. § 1313(d)(2). The tight deadline for submission of the TMDLs emphasizes an obvious congressional mandate that TMDLs be established in a matter of years, not decades. *See Idaho Sportsmen's Coalition v. Browner*, 951 F.Supp. 962, 967 (W.D.Wa.1996). Montana failed to develop any TMDLs until 1996. In 1996, the state only identified 1 TMDL. In the nineteen years since 1979, Montana has developed 130 TMDLs. At its current pace, the state will need over one hundred years to develop the 3,000 TMDLs required for the WQLSs identified in 1998. The net result will be to put off for another generation a mandate that Congress required be taken years ago. Because TMDLs provide a basis for developing pollution control measures where technology-based point source controls prove inadequate, TMDLs must be developed quickly if they are to serve their intended purpose. *See* 33 U.S.C. § 1313(d)(1)(A); *Browner, supra*, 951 F.Supp. at 967. Montana's submission of 130 TMDLs in 1998 fails to meet the CWA's requirement that states promptly develop TMDLs for the WQLSs they identify. Accordingly, I find that the EPA acted arbitrarily and capriciously when it failed to disapprove of Montana's inadequate submission of TMDL's.

The court's imposition of a schedule is also supported by Montana's history of delay and EPA's repeated failure to require the timely development of TMDLs as evi-

---

**2.** Appellants' citations to cases rejecting modification of an agency order without remand are unpersuasive. *See, NLRB v. Food Store Employees Union, Local 347*, 417 U.S. 1, 11, 94 S.Ct. 2074, 40 L.Ed.2d 612 (1974) (holding that court must remand to the agency to determine whether intervening change in policy applied retrospectively rather than modifying agency's order to incorporate the change); *Idaho Power*, 344 U.S. at 20. Here, the district court did not simply modify an order without remand.

denced by numerous court orders and consent decrees across the country.

In *Alaska Center for the Environment v. Browner*, 20 F.3d 981 (9th Cir.1994), we approved a district court's imposition of specific steps to bring EPA and Alaska into compliance with the TMDL requirements, including a requirement that EPA propose a schedule for establishment of TMDLs within 90 days of approving Alaska's TMDL list, a requirement that within one year of the approval or disapproval, EPA submit to the court a report on ambient water quality monitoring, and a report in proposing a schedule for implementation of measures regarding ambient water quality. *Id.* at 984. In approving these measures, we stated:

> The district court has broad latitude in fashioning equitable relief when necessary to remedy an established wrong. *Weinberger v. Romero–Barcelo* 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). In this case the established wrong is the failure of the EPA to take any steps to establish the TMDLs mandated by Congress for more than a decade. In tailoring the relief granted, the district court correctly recognized that in order to bring about any progress toward achieving the congressional objectives of the CWA, the EPA would have to be directed to take specific steps. In selecting the remedy that it did, the district court acted with great restraint in requiring only that steps undeniably necessary to the develop-

ment of TMDLs in Alaska be accomplished by deadlines that are far more lenient than those contained within the CWA itself.

*Id.* at 986.[3]

■ Given the district court's discretion in fashioning equitable remedies and the fact that the district court here adopted a schedule that the Montana Legislature initially adopted, we cannot say the district court abused its discretion on the record before us. If the timeframe proves unworkable, the agencies can return to court with evidence justifying a delay and propose a modification of the schedule.

■ We conclude, however, that the district court abused its discretion in ordering that "[t]he EPA's failure to meet any milestone of the established schedule shall constitute a final agency action." The Supreme Court has identified specific criteria for rendering agency action final. *See Bennett*, 520 U.S. at 177–78. The district court cannot overrule binding precedent *sub rosa* by including such language in its order.

## C. Prohibition on Permit Issuance Until All TMDLs are Established

■ Appellants argue that the district court's order prohibiting new permits or increases in permitted discharges until all necessary TMDLs are established for particular WQLSs interferes with the regulatory scheme, which does not require a

---

**3.** *San Francisco BayKeeper v. Whitman*, 297 F.3d 877 (9th Cir.2002) (*"BayKeeper"*), relied upon by Appellants, simply did not address the issue raised in this case. In *Baykeeper*, we rejected both a constructive submission theory where some TMDLs had been submitted and the theory that EPA had a duty to act unless all TMDLs were submitted simultaneously with the WQLSs. *Id.* at 883–85. We also rejected a claim under 5 U.S.C. § 706(1) that EPA had unreasonably delayed establish-

ing TMDLs because we found no statutory duty to act. *Id.* at 886. Here, however, the district court found, under 5 U.S.C. § 706(2), that EPA arbitrarily and capriciously approved Montana's § 303(d) submission without considering the CWA's statutory goals of eliminating pollution by 1985. Friends' claim, that EPA must take the statutory timeframe into account in its decision-making process, is more limited than the claims at issue in *Baykeeper*.

complete ban on discharges in violation of state water quality standards. *See Arkansas v. Oklahoma,* 503 U.S. 91, 108, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992). The district court's order, however, does not impose a complete ban but only restricts the issuance of new permits or increased discharges for WQLSs, which are already in violation of state water quality standard. This comports with the regulatory requirement precluding issuance of new permits for new sources that will cause or contribute to a violation of water quality standards. *See* 40 C.F.R. § 122.4(i).[4]

### D. Requirement to Develop TMDLs for All WQLSs on the 1996 List

█ Appellants argue that the district court abused its discretion by requiring the development of TMDLs for all WQLSs on the 1996 § 303(d) list, regardless of whether they are subsequently de-listed. In its order rejecting Appellants' request to modify the judgment, the district court appears to have intended that WQLSs not be removed from the list: "As a practical matter, if WQLSs can be removed from the list, then EPA's responsibility under the Order will not be clear until May 4, 2007." The refusal to modify the judgment creates a conflict with Montana's duties under state law periodically to revise the list of WQLSs. *See* Mont.Code. Ann. § 75–5–702(4) (Montana Department of Environmental Quality must revise lists at intervals not to exceed five years). Both state and federal law allow for revisions to the list. *See* 40 C.F.R. § 130.7(b)(6)(iv) (allowing de-listing for good cause, such as the flaws in the origi-

nal analysis or better data); Mont.Code. Ann. § 75–5–702(1)–(6) (requiring continual revision based on new data). We therefore hold that this requirement also was an abuse of discretion. As a practical matter, the court's apparent concern that the modification would allow the EPA easily to sidestep the court's order is likely unwarranted given that de-listing has procedural requirements and the failure to follow them could result in further legal action.

### CONCLUSION

Based on the foregoing, we conclude that the district court did not abuse its discretion in setting a deadline for submission of TMDLs or in limiting the issuance of new permits. The district court, however, did abuse its discretion by ordering that failures to meet the deadline would constitute final agency action and in refusing to permit modifications to the 1996 list. Therefore, in each of these consolidated appeals, the district court's order is affirmed, except as to the latter two provisions, as to which the order is reversed, and the case is remanded for further proceedings consistent with this disposition. Each party shall bear its own costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

---

4. Appellants also argue that the district court acted in excess of jurisdiction because the CWA vests jurisdiction in the courts of appeals to review issuance of permits under the NPDES program. *See* 33 U.S.C. § 1369(b)(1)(F) ("Review of the Administrator's action ... in issuing or denying any permit ... may be had by any interested person in the Circuit Court of Appeals....."). This argument fails because the district court's order did not address the adjudication of a particular permit application as § 1369 contemplates.