Summary
12/11/2017 11:46:53 AM

<span style="color:red">Differences exist between documents.</span>

**New Document:**
17-801_new
10 pages (91 KB)
12/11/2017 11:46:52 AM
Used to display results.

**Old Document:**
17-801
10 pages (91 KB)
12/11/2017 11:46:51 AM

Get started: first change is on page 8.

No pages were deleted

**How to read this report**

Highlight indicates a change.
Deleted indicates deleted content.
▲ indicates pages were changed.
↔ indicates pages were moved.

# SUPREME COURT OF THE UNITED STATES

_____

No. 17A570 (17–801)

_____

## IN RE UNITED STATES, ET AL.

ON APPLICATION FOR STAY AND PETITION FOR WRIT OF
MANDAMUS

[December 8, 2017]

The application for a stay presented to JUSTICE
KENNEDY and by him referred to the Court is granted, and
the District Court's September 22, 2017, October 17, 2017,
and November 20, 2017 orders, to the extent they require
discovery and addition to the administrative record filed
by the Government, are stayed pending disposition of the
Government's petition for a writ of mandamus or in the
alternative a writ of certiorari.

Responses to the Government's petition for a writ of
mandamus or in the alternative a writ of certiorari must
be filed by Wednesday, December 13, 2017 at 4:00 p.m.

JUSTICE BREYER, with whom JUSTICE GINSBURG,
JUSTICE SOTOMAYOR, and JUSTICE KAGAN join, dissenting
from grant of stay.

On September 5, 2017, the Government announced its
decision to terminate the Deferred Action for Childhood
Arrivals (DACA) program, effective March 5, 2018. The
Department of Homeland Security (DHS) had adopted
DACA in 2012. Since that time, DACA has provided that
immigrants brought to the United States illegally as
children who meet certain other requirements could obtain
work authorization, a social security number, and permis-
sion to travel overseas and lawfully return to the United
States. Nearly 800,000 people have benefited from the
program.

After the Government announced its decision to terminate DACA, respondents filed suit in the U. S. District Court for the Northern District of California to challenge the Government's termination of the program under the Administrative Procedure Act (APA) and on other grounds.  The merits of that challenge have not yet been addressed by the District Court, and they are not before us.  But the Government has filed a petition for a writ of mandamus in this Court to challenge the District Court's order that it provide additional documents to complete the administrative record concerning the Government's decision to terminate DACA.  The U. S. Court of Appeals for the Ninth Circuit previously denied the Government most of the relief the Government seeks here.  See *In re United States*, ___ F. 3d ___ (2017).  I would do the same.

A writ of mandamus is "a 'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'"  *Cheney* v. *United States Dist. Court for D. C.*, 542 U. S. 367, 380 (2004) (quoting *Ex parte Fahey*, 332 U. S. 258, 259–260 (1947)).  In my view, the Government's arguments do not come close to carrying the heavy burden that the Government bears in seeking such extraordinary relief.  With respect, I therefore dissent from the Court's decision to grant a stay pending further consideration of the Government's petition for a writ of mandamus.

I

The Government's primary argument is that "the district court plainly erred by . . . ordering the government to 'complete' the administrative record with materials beyond those presented by the agency to the court," because a reviewing court's sole task under the APA is to "determine whether the agency's action may be upheld on the basis of the reasons the agency provides and 'the record the agency presents to the reviewing court.'"  Pet. for Mandamus 19, 24 (quoting ___ F. 3d, at ___ (Watford, J.,

dissenting) (slip op., at 1)).  The Government thus contends that review of its decision terminating DACA must be based exclusively on the documents that the Government itself unilaterally selected for submission to the District Court.  I am not aware of any precedent supporting the Government's position.

The APA is clear that a court reviewing agency action must review "the whole record" to determine whether that action is lawful.  5 U. S. C. §706.  The basic question here is what constitutes "the whole record" that the court must review.  We held in *Citizens to Preserve Overton Park, Inc.* v. *Volpe*, 401 U. S. 402, 420 (1971), that the "whole record" means "the full administrative record that was before the Secretary at the time he made his decision." *Ibid.*  Neither this Court nor the lower courts has ever read *Overton Park* to limit the "full administrative record" to those materials that the agency unilaterally decides should be considered by the reviewing court.

Indeed, judicial review cannot function if the agency is permitted to decide unilaterally what documents it submits to the reviewing court as the administrative record. Effective review depends upon the administrative record containing all relevant materials presented to the agency, including not only materials supportive of the government's decision but also materials contrary to the government's decision.  See *Motor Vehicle Mfrs. Assn. of United States, Inc.* v. *State Farm Mut. Automobile Ins. Co.*, 463 U. S. 29, 43–44 (1983).  Otherwise, the reviewing court cannot engage in the "thorough, probing, in-depth review" that the APA requires.  *Overton Park*, 401 U. S., at 415–416.  A court deprived of a full administrative record could not consider, for example, whether the decision was based on the consideration of irrelevant factors, *id.,* at 411–412; whether it considered the relevant factors, *id.,* at 416; whether the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law,"

§706(2)(A); or whether the decision was unlawful for some other reason.

Perhaps for this reason, the lower courts seem to have unanimously rejected the Government's position that the agency may unilaterally determine the contents of the administrative record that a court may review. In *Thompson* v. *Department of Labor*, 885 F. 2d 551 (CA9 1989), for example, the Ninth Circuit explained:

> "The whole administrative record . . . is not necessarily those documents that the *agency* has compiled and submitted as 'the' administrative record. The 'whole' administrative record, therefore, consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Id.,* at 555 (citation and some internal quotation marks omitted).

See also, *e.g., Bar MK Ranches* v. *Yuetter*, 994 F. 2d 735, 739 (CA10 1993) ("An agency may not unilaterally determine what constitutes the Administrative Record").

To be sure, we also said in *Overton Park* (referring to the famous case of *United States* v. *Morgan*, 313 U. S. 409, 422 (1941)), that "inquiry into the mental processes of administrative decisionmakers is usually to be avoided" absent a showing of bad faith or improper conduct. 401 U. S., at 420. But we said that in the context of explaining the circumstances under which officials "who participated in the decision" could be required "*to give testimony* explaining their action." *Ibid.* (emphasis added); see also *Morgan, supra,* at 422 (discussing the testimony of the Secretary of Agriculture).

Probing a decisionmaker's subjective mental reasoning—what was at issue in *Morgan* and *Overton Park*—is distinct from the ordinary judicial task of evaluating whether the decision itself was objectively valid, considering all of the materials before the decisionmaker at the

time he made the decision. *Overton Park*, *supra,* at 420. And the testimony of the decisionmaker, at issue in *Morgan* and *Overton Park*, cannot be deemed properly part of the administrative record in any event, because it did not exist until after the agency decision had been made. See *Florida Power & Light Co.* v. *Lorion*, 470 U. S. 729, 743 (1985) ("'[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court'" (quoting *Camp* v. *Pitts*, 411 U. S. 138, 142 (1973) (*per curiam*)).

The documents that the District Court ordered the Government to provide are documents that were considered by the decisionmaker or those advising her and that were "already in existence" at the time of the relevant agency decision. At least facially, these documents do not seem to involve "inquiry into the mental processes" of the decisionmaker at all. They thus do not implicate the bad faith or improper conduct standard from *Overton Park*.

In taking the position that the agency unilaterally decides which documents make up the administrative record, the Government relies heavily on the D. C. Circuit's decision in *San Luis Obispo Mothers for Peace* v. *NRC*, 789 F. 2d 26, 44–45 (CADC 1986) (en banc). *San Luis Obispo* expanded *Morgan* and *Overton Park*'s bad faith or improper conduct standard to apply to one narrow category of pre-existing, documentary materials: records of the closed deliberations of the members of a multimember agency. See *San Luis Obispo*, 789 F. 2d*,* at 44–45. Such records, the D. C. Circuit has explained, are functionally equivalent to deposing an agency head to explain her decision—they represent the "collective mental processes of the agency." *Id.,* at 44. This Court has never passed on this extension of *Morgan* and *Overton Park*. But in any event, it does not help the Government here because DHS, which made the decision to terminate DACA, is not a multimember agency, and so the records the District

Court ordered produced are not protected by *San Luis Obispo* either.

The Government also relies on our decision in *Cheney*, 542 U. S. 367. But *Cheney* concerned only requests for documents from the White House itself. Such documents seem to form at most only a small portion of the documents that the District Court ordered the Government to add to the administrative record, so *Cheney* cannot justify the broad relief from any obligation to complete the administrative record that the Government seeks. And, moreover, the Government has failed to argue with any specificity about the burden that the requirement to include White House documents in particular in the administrative record will impose, so it is impossible for this Court to perform the sort of balancing analysis that we said was necessary in *Cheney*. *Id.,* at 385.

Finally, the Government relies on dictum from *Florida Power & Light*, 470 U. S., at 742–744, that judicial review is to be conducted "based on the record the agency presents to the reviewing court." But the Government takes that language out of context. The quoted language comes as part of the Court's explanation for why there is often no need for independent district court factfinding as part of APA review: namely, because that review will be based on "'the administrative record already in existence, not some new record made initially in the reviewing court.'" *Id.,* at 743 (quoting *Camp, supra,* at 142). Thus, what we meant by the phrase the Government quotes was that review is to be "based on the record the agency *proceedings* present to the reviewing court," 470 U. S., at 744—just what we said in *Overton Park*. No more was at issue in *Florida Power & Light*. That case did not hold that the Government gets to define unilaterally the scope of the documents it submits to the reviewing court as the administrative record.

In sum, the cases, both in this Court and in lower

courts, hold or are consistent with the proposition that a reviewing court has the power to order the Government to supplement documents already provided with other documents where necessary to give the court "the full administrative record." *Overton Park*, 401 U. S., at 420.

## II

The Government also raises various other concerns, but they similarly fail to show the Government's entitlement to extraordinary mandamus relief.

The Government asserts that some of the documents the District Court ordered be included in the administrative record are protected by various privileges. But the Government has not developed a specific claim of privilege as to any particular document to us here or to any court below. See Application for Stay 24; see also \_\_\_ F. 3d, at \_\_\_, n. 8 (noting that the Government "provided little in the way of argument regarding the specific documents ordered disclosed by the district court"). The closest the Government comes is with repeated references to a single document out of the 35 that the District Court found not privileged and ordered it to produce. The Government describes it as a memorandum from the White House Counsel's office to the President. But even as to this one document, the Government offers no legal or factual support for its claim of privilege aside from its bare description. The District Court reviewed that document, and the other 34, and concluded that they were not privileged. We have not seen these documents, and we consequently have no basis to question the District Court's conclusion.

As for any additional documents that the Government may believe are privileged, the District Court's order leaves the Government free to withhold privileged documents from the administrative record. The Government simply has to explain the basis for its privilege claim and provide the documents *in camera* for the District Court to

review.  Given that the District Court concluded that of
the first 84 privileged documents the Government at-
tempted to withhold from the administrative record, 35
were not in fact privileged, the District Court's require-
ment that the Government justify its future privilege
claims and file the documents for review *in camera* seems
to be a reasonable exercise of the District Court's consid-
erable discretion in this area.

The Government also complains about the burden im-
posed by the District Court's order, but that argument is
also beside the point.  The Government complains that it
must review 21,000 documents as potentially part of the
administrative record.  But the underlying agency action
here is important, and that is by no means an unusually
large number of documents; administrative records often
contain hundreds of thousands of documents.  See, *e.g.,*
*Georgia ex. rel. Olens* v. *McCarthy,* 833 F. 3d 1317, 1320
(CA11 2016) (noting that the administrative record "is
more than a million pages long").  Moreover, the Govern-
ment's argument about burden is based almost entirely on
how quickly it must comply with the District Court's
order.  See Application for Stay 28–31.  But the current
December 22 deadline was set by the District Court on
November 20, 2017—three days *after* the Court of Appeals'
decision.  The Government is free to request an additional
extension of time from the District Court or to seek man-
damus relief from the deadline in the Court of Appeals.
The Government has done neither.  And so the Govern-
ment's challenge to that deadline, and thus to what it says
is the unreasonable burden to review thousands of docu-
ments in such a short period of time, seems to be barred
by this Court's Rule 23.3, because it fails to explain "with
particularity why the relief sought is not available in any
other court."

The same is true of the Government's objections to the
District Court's order that discovery of documents and

information outside the administrative record will begin on December 22. The Government has not challenged any particular discovery order as overbroad in the District Court, much less in the Court of Appeals. The Government's objections are thus premature. Concerning depositions, for example, the most the Government can say is that "the district court *will likely allow*" depositions of "numerous witnesses." Reply in Support of Application for Stay 13–14 (emphasis added). Perhaps the District Court will allow those depositions and perhaps it will not. But I do not see how we can restrain by mandamus an order that the Government merely fears that the District Court might enter in the future.

### III

The Government also argues that a stay of the District Court's orders is appropriate because judicial review of the agency decision at issue is precluded by the APA as "committed to agency discretion by law," 5 U. S. C. §701(a)(2), and by the Immigration and Nationality Act, 8 U. S. C. §1252(g). But that argument goes to the merits of the respondents' underlying lawsuit, which have not yet been addressed by the District Court and are not now before this Court, rather than to the proper contents of the administrative record assuming that the agency decision is subject to review. The District Court on September 21 offered the Government the opportunity to file an early motion to dismiss and thus obtain a decision on its threshold objections before the preparation of the administrative record. The Government rejected that offer, preferring instead to defer the issue to summary judgment motions. I see no reason to grant a writ of mandamus to relieve the Government of the consequences of that decision.

### IV

Except in the most extraordinary circumstances, this

Court's long-settled practice has been to leave these sorts of burden and discovery-related procedural disputes to the district courts, with occasional court of appeals intervention. We follow this practice for good reason. To understand whether a particular discovery order is overly burdensome typically requires a deep understanding of the overall factual context and procedural history of an individual case. This Court is thus poorly positioned to second-guess district courts' determinations in this area.

The Court today abandons its practice of nonintervention in this kind of discovery-related dispute. In addition to disrupting the progress of this litigation, I fear that the Court's decision to intervene here means we will be asked to address run-of-the-mill discovery disputes in many other matters, certainly when the Government is involved and potentially when it is not involved. In my view, the Court should maintain its usual policy of abstaining from disputes like this one.

For these reasons, with respect, I dissent from the Court's grant of the Government's application for a stay pending further consideration of its petition for a writ of mandamus.